Judge Underwood,
delivered the opinion of the court.
On the Sth of November, 1821, Jacob Castleman conveyed to Charles P. Bacon certain premises situated in Frankfort, in trust’, for the purpose of indemnifying him on account of securityships, and for the purpose of securing the payment of a debt to Charles Miles of $1150, as stated in the deed’, evidenced iSbv note bearing date the day of 18 f and also for the purpose of securing the pryrnent of a •mote for $1200, bearing date the day of 18 by which Thomas White and said Castleman , were bound to the legatees of John Allen, deceased, and also to secure the payment of an account in favor of Joseph and Collin Cooper, against said Castle- . man, for $520; and also to secure an unsatisfied balance of $2000, due upon a replevin bond executed to Jacob *458 Allen Tharp, which sum of $2000 was ehdorsed on thé execution, for the benefit of David Castleman. The deed of conveyance expressly names the “rents, issues and profits” of the estate as conveyed, for the purposes of the trust. The true design and intent of the conveyance is declared to be, “to indemnify and keep harmless the. party of the second part, in and concerning his liability, by reason of his becoming security as aforesaid, and to secure to the several persons and parties herein before specified and named, the payment of the respective sums of money so owing to them, by the party of the first part.” To accomplish the purposes intended, power is given to Bacon, “at any time to sell and dispose of the premises or any part or parts thereof, either by private sale or at public auction, for cash or on a credit, to. any person or persons, whomsoever, and on such sale, to convey the title, &c., and out of the monies arising from such sale or sales, to secure, indemnify and remunerate himself, for of and concerning his said liability, &c., and to pay himself, and to pay and satisfy all and singular, the several sums of money herein before recited, owing, by the party of the first part, to the persons and parties aforesaid, to effectuate which security and indemnification, and to satisfy, pay and discharge which debts, this writing hath been executed, and these powers granted, together with all costs, charges and expenses that shall or may be due, accrue, arise.or happen, by reason or on account of such sale or sales, and the overplus money, if any, to be paid on demand, to the party of the first part.”
In .1826, Miles and White, as joint complainants, filed their bill against Bacon, David Castleman, Joseph and Collin Cooper, and Jacob Castleman, alleging, that they were suffering in consequence of Bacon’s failure to execute the trust, by selling the trust estate. They •claim the sums mentioned in the deed of trust, as intended to be secured for their benefit, they call on the defendants to set forth their demands specifically, and to say whether the whole or any part has beeri paid or satisfied by said Castleman or his trustee, and they conclude by asking for a decree, directing a sale, &c., and for general relief.”
David Castleman, although served with a subpoena, filed -no answer.
*459 Joseph and Collin Cooper say, in their answer, that their claim, as set out in the deed of trust,'is still due and unsatisfied. They join with the complainants in praying for a sale of the trust estate, and require a fair--distribution of the proceeds among those unsettled. They also claim their just proportion of the rents and profits. It does not appear that this answer was verified by oath.
Bacon answered, expressing a willingness to have the trust terminated. He alleged, that he “had expended large sums of money in relation to the trust, and for repairs made on the premises, amounting to $ , as an offset to which, he had received certain rents, accruing from the premises, amounting to $ , all which will fully appear from accounts filed as part of this answer.” He prayed that an auditor might be appointed to adjust and settle the claims of the respective parties, in order to enable the court to enter up a final decree.
Jacob Castleman did not answer the original bill.
The complainants filed a supplemental bill, in which, Miles charges, that in consequence of the note held by him, on Jacob Castleman, not being present when the deed of trust was executed, that a mistake was commit-' ted in describing its amount, and that the debt, which was intended to be secured, was $1282, (for which sum Castleman’s note is exhibited) instead of $1150.
Jacob Castleman, in an answer to the supplement, admits its truth.
Bacon, in an answer to the supplement, requires full proof of its allegations, and contends, if it be true, that the debt intended to be secured, was $1232; nevertheless, the complainant, Miles, cannot succeed beyond the sum assured and guaranteed by the deed of trust. The Coopers did not answer the supplement..
Bacon amended his answer, and charged that he had recently discovered that the Coopers had received sundry payments from, Jacob Castleman on account of the demand intended to be secured to them by the deed of trust, and for which they had given no credits. He charges, that they drew an order bearing date, 8th November, 1821, upon J. Castleman, in favor of B. N. *460 Hindi man, upon which Castleman, on the 12th of Jan--uary, 1822, paid §25’.), and on the 1st of May, 1822, §111 25 cents more, for which sums receipts were cn--dorsed on the. order which he exhibits. He, therefore, prays that his answer may be taken as a cross-bill against the Coopers, and that they may be compelled to answer on oath, &c. It does not appear that he took out any process against the Coopers. They did not answer.
At the March term, 1827, whoa Bacon’s answer was filed, and when the complainants amended their bill, by consent, the cause was submitted to the court for a decree, The court appointed a commissioner to audit and, state the accounts of the parties. The cause was recommitted to auditors, until three or four reports were obtained from them. It appears from tire reports of evidence in the cause, that Bacon paid, as surety for J. Castleman, in notes on the hank of the commonwealth, on the 13th of June, 1822, §1313 10 cents, then worth 514 cents to the dollar; on the 28th of February, 1823, §700, then worth 58 cents to the dollar; and on the 22d of July, 1821, §609, then worth 50 cents to the dollar. It appears from the reports, that Bacon received considerable sums for rents, and that he expended liberally for repairs. The last report shows a balance against him exceeding §1000. The times when he received the various,sums for rent, (most of which were received in notes on the bank of the commonwealth,) are stated, and likewise the value of commonwealth’s paper at these different periods. The commissioner reported an allowance of §250 in commonwealth’s paper, in lieu of §400, claimed by Bacon for his services, as trustee.
The first report of the. commissioner was returned during the term at which he was first appointed. At the same term, to-wit: on tire 5th of April, 1827, the report was ordered to be fded, and the question of distribution resumed for a final decree; and then, as the record states, f‘by consent of parties, this cause is again submitted to thp court for further decree.” The court proceed to order, “that unless J. Castleman shall, on or before the first day of next June, pay and satisfy the other parties to this suit, their several demands, that his equity of redemption should be closed, and the premises sold.. And for the purpose of enabling the court *461 to make a final decree, T. Y. Bryant is appointed commissioner, and is hereby directed forthwith to proceed to advertise, at the courthouse door, (fee. the property named in the deed of trust, for sale, on a credit. And in the event that Castleman fails to pay and satisfy the-demands, on or before the said 1st of June, then'the commissioner is directed to procee 1 to sell the premises,, either in gross or in part, as will best suit purchasers, and promote the interest of the parties concerned, on a credit of one and two years, taking bond and approved security, &c.” On the 7th July, 1827, Bryant made his report, staling, that with the approbation of the complainants and Bacon, he had divided and sold the premises in parcels, when Bacon bought three of the lots,atthe aggregate price of $4J3t)., and White, the complainant, bought the other, at the price of $1701), making the total amount of the sale $573J. At a subsequent day of the same term, the report was confirmed, and the court ordered deeds of conveyance to be made to the purchasers, reserving a lien on the lots to secure the purchase money. It appeals that J. Castleman, and Bacon, the trustee, conveyed, as required, and that the deeds of conveyance reserve a lien to secure the payment of the purchase money. The court rendered a final decree, containing, in substance, the following provisions.
1. That the defendant, Bacon, should be paid out of the trust fund, the amount paid him as surety for Castle-man, by reducing the commonwealth’s paper paid, to Us specie vaiue, al the times of payment. The court fix the sum in specie at $ 13 i 1 55 cents, and give Bacon a decree for that sum, without interest; but his claim is preferred to those of the other claimants, and is to be first satisfied. *
2. The court next consider the amount of specie and commonwealth’s paper, in the hands of Bacon, as trustee, arising from rents collected, and applies the same to the payment of said $1381 55 cents, requiring, however, that Bacon shall account for the value of the commonwealth's paper, received by him, for rent, at the date of the decree, (lo-wit: 1st of August, 1828,) instead of the value in specie, at -the times it was received by him. Without fixing the value of the paper so collected for rents, and adding it to the specie in Bacon’s *462 hands, and thereby ascertaining the difference between the sum so made and the §1384 55 cents decreed to Bacon, the court, in reference to the sum which he is to account for as rents, say, “if the same shall be insufficient to satisfy the sum and demand of the said defendant, Bacon, as herein decreed him, it is further ordered and decreed, that he have credit for the excess or residue, on a judgment for §2015, rendered against him in this court, at the present term, on his bond as a purchaser of part of the trust estate.
3. The court refuse to allow Bacon any compensation for his services, as trustee.
4. Having disposed of Bacon, the court, in relation to the other parties, proceeds thus: “It is further ordered and decreed, that the complainants, Miles and White, and the defendants, D. Castleman and J. and C. Cooper, and there is hereby adjudged to them, out of the residue of the trust fund, arising from the sale of the property conveyed by J. Castleman to the said Bacon, their several claims and demands against the said J. Castleman, as far as the same are supported by satisfactory and competent proof, provided there be sufficient of the said trust fund wherewithal to pay them the full amount of the same, and if there he not sufficient, then, that the amount of the said trust fund-, arising as aforesaid, be equally divided among them in proportion to their several debts and demands, as liquidated and established.”
The decree then concludes, by stating, that the ob" jections of the complainants to the item of §400 in com' monwealth’s paper, reported by the commissioner as, rent due by Bacon, for the occupation of part of the-trust premises, are overruled, and that the objections made by Bacon,to allowing the claim, set up by Miles as a charge upon the trust estate, are likewise overruled.
From the foregoing decree, the complainants and' defendant, Bacon, have prosecuted appeals. Numerous errors, have been assigned and insisted on in argument., Those which are deemed important, will be noticed in the progress of this opinion, without literally inserting them. We shall first consider and dispose of the errors relied on, and assigned by Bacon,
Surety, who pays in commonwealth's papferthe debt of his principa), is entitled trt recover the specie value, ot the commonwealth’s pap’r at date of the payment and interest npori that value. In assumpsit by surety against principal for money advanced in discharge of debt of principal jury may give interest by way of additional damages. Chancellor' should give the surety interest upon money advanced by him in discharge of debt of his principal.
If a trust fund be created in part for the benefit of the trustee, and he accepts the trust without any stipulation for compensation for his services, he is entitled to none.
The first error assigned by him, calls in question that part of the decree, which refuses to allow interest on the money paid as surety for Castleman. if Bacon be entitled to remuneration on that amount, out of the trust estate, he should have been allowed interest on the specie value of the commonwealth’s paper advanced by him from the dates of the several payments. The statute giving remedy by motion, in behalf of sureties against their principals, allows interest, (II Dig. 1118.) In an action of assumpsit, where a surety pays the debt or demand for his principal, a jury would be Warranted in giving interest by way of additional damages, and no jury would fail to do it, on account of the hardship as between the obligors, in letting the burden fall on him, whose only motive for incurring the obligation was friendship. This rule of law should be equally respected and enforced by the chancellor. Interest when allowed, is but poor compensation for the sacrifices and ruin which are often brought upon sureties, by the misfortunes or frauds of their principals.
It was not error to scale the commonwealth’s paper paid by Bacon. He could not recover it specifically at law, as his case does not come witlm the operation of the statutes. The chancellor had no right to adopt a different rule than that which' prevailed at law, and thereby to allow more in value than could have been recovered at law.
Bacon complains that the court did not allow him compensation for his services ns trustee. It is expressly declared in Jacob’s Law Dictionary Tifie Trust, that “a trustee is entitled to no allowance for his trouble in the trust.” It is conceded in argument, that this is the English rule, and likewise the rule in New York; but it is contended, upon analogy to the compensation allowed executors and administrators, that trustees situated like Bacon, should he paid for their services. The argument is not sound, because the statute makes the difference in favor of executors and administrators, (I Dig. 532.)
The acceptance of a trust is altogether voluntary on the part of a trustee, and if he choose to take one upon himself coupled with an interest, as in this case, without auy stipulation for compensation, he cannot com-piain that it is refused. The deed of trust in this case, *464 provides for the payment of all charges, relative to the sales to be made by the trustee. It is silent as to the payment of any charges for his superintendence and trouble. It may be, that Bacon proposed to Castle-man, that he should be compensated'; that it was refused; and that he thereupon ^agreed to take the trust without it. Whether the English rule is of universal application m this country, need not be determined.
It was error to charge Bacon with the specie value "of the commonwealth’s paper, which he had collected for rents at the date of the decree. There seems to us to be great injustice in scaling the commonwealth’s paper advanced by him, to its specie value, when at its greatest depreciation, and making him account for the commonw'ealth’s paper, collected "for rents, at its maximum value, while in his hands. This rule, while it makes the depreciation, operate severely upon him, likewise "makes the appreciation another’s gain. Bacon, as trustee, should have applied the rents "as they were collected "to the extinguishment of the debts, chargeable upon the estate^ As a creditor, lie might rightfully apply the rents to the payment of his own demand"; provided, he did not take toore of them than was his share. The rents must be so applied upon the return ■of the cause. Thus the principal and interest cf Bacon’s claim will be diminished as the rents were received by him, and this will operate so as to make the other claimants larger sharers in the other funds.
Bac'on insists that it vims error to allow any part of Miles’ demand. We think otherwise, it is true, that the note exhibited by Miles, did not correspond in amount with the sum stated in the deed of bust. But it is clear, that Miles at the date of the deed of trust held the note for $ 1282, and that the note was not before Castleman at the time he executed the deed of trust; for if it had been, he would not have left the date of the note, when describing- it a blank in the deed. It was ■therefore, a mistake on the part of Castleman, in putting down Miles’ debt at $1150, instead of $1282. The "conseqnce of this "mistake "is to be deterrni u d. The existence of die debt for $1282, is an ample consideration "for the provision made in behalf of Miles in •the deed of trust. The pre-existing debt was even ■larger than that stated in the deed. It would there- *465 lore, be against all conscience to deprive Miles of a provision made for his benefit upon ample consideration, when no better or other reason could be assigned for it, than the mistake commuted in describing the debt. It is the duty of the chancellor, to relieve the in juries, resulting from mistakes, rather than to make the existence of a mistake, the foundation of a decree inflicting injury. . Castleman designed to secure the debt of Miles. To the extent of §1150, he recognized it in the deed, and to that extent at leas', the court should sanction the claim of Miles with interest.
Deed made by debtor conveying several of fits creihlors,^e-Jf the debts due f“oh creditor, one^credbor0 bo described in the deed ns an was, the mistake cannot th^preju-^i0c of the other creditors,
We are of opinion however, that the court ought ■not to regard the claim of Miles for more than the §1150, and interest, when brought to opeiate against the interests of Bacon, and the other crslui que trusts. They are no way responsible for the mistake, and •correction in respect to them, would change their attitude and effect their demands, if the trust-fund is in■sufficient to pay alL They have a right to insist on the d:stribution of the fund according to the proportions -recognized upon the face of the deed. From that, Miles is limited to $1150. The other cestui que trusts •might not have acquiesced in, or accepted the provis-iors made for them by the deed, if it had been known •to them, that the demand of Miles was íhéreafier, to be enlarged-. If Miles concealed the amount of his claim it was a fraud. If it be an innocent mistake', as we believe, even that cannot be altered or changed to •the prejudice of parties not responsible for it, and who might have pursued a very different course with their -debts, had they been correctly infoimed. In to those, then the deed of trust must be enforced as it is; but if there be a surplus of the (rust-fund, after paying their debts, we perceive no good objection to a correction of the mistake, as between Miles and Casile-man; and the application of the surplus accordingly, as-Castleman in his answer, seems to assent to a lien in •favor of Aides, for the full amount of his note. (The chief justice is of opinion, that the deed of trust secures to Aiiies the full amount oC his note, and that the terror, as to the amount in the desi ription of the note does not essentially affect the construction of the deed.)
Bacon objects to the allowance made to Joseph and Collin Cooper. Their answer claims the amount re* *466 cognized by the deed of trust as due them, and alleges, that it had not been paid. It was right to decrée it to them, unless something appeared to contradict their answer. There was no evidence to the contrary. No process issued on Bacon’s cross-bill against them. They were not hound to notice it. No proof was taken cf the genuineness of the order drawn by them, in favor of Hinchman, nor of the genuineness of his receipts endorsed on the order.
Process should be issued on answer in nature of a cross- bill; otherwise, defendant is not bound to notice it.
Court, in cases of mortgages and deeds of trust to secure the payment of debts, should give n day in term-time for the payment of the money, and in default thereof,’ order a sale of so much of the property as may be sufficient to pay the debt and costs Court should not compel the holder of a lien on real estate to surrender that lien and take personal securty for the payment of his debt
We shall now proceed to the consideration of the errors assigned by the complainants upon their appeal.. Between them, there is a disagreement, for whilst Miles contends that the sale of the trust estate should be set aside, White protests against the assignment of every error which calls in question, the validity of the sale* We do not regard it important to determine the effect of this disagreement between the complainants; for upon due consideration, we are of opinion, that the sale must stand, had both the complainants united in opposing it instead of one. We admit the correctness of the doctrines contended for in the general, that it is the duty of the court, in cases of mortgages and deeds of trust, to secure the payment of debts, first to asceitain and settle the rights of the parties, then to give a day in term time, for the payment of the money, and in default thereof, then to order a sale of so much of the estate as shall be sufficient to pay the debt and costs. We likewise concede, that the court ought not to compel the holder of a lien on real estate to surrender that lien, and to.take personal security for the payment of his debt. The lien should he retained until the money is paid, and the way'to effect this is, to order sales ibr cash in hand. We grant that the foregoing principles have not been strictly regarded by the court, in the proceedings in this case, and yet we think the sales ought not to be disturbed. Were it not for the act of 1819, (I Dig. 323,) it would have been altogether unnecessary in this case, to apply to the court of chancery, to order and decree a sale.
Whether the sole object of that act was in accordance with the spirit of the times, to prevent the sacrifice of property under the despatchful proceedings of a trustee, in executing the powers vested in him, by substituting the more-tardy movements of a court of chan- *467 eery or to place the superintendence of sales in more trust worthy hands than those selected by the parties, is not material. Both considerations may have operated with the Legislature. Let the act have sprung-— from whatever motives, its effect is the same. It can only operate, by substituting the chancellor and requiring him to execute the powers vested in the trustee, There is nothing in the act which restrets the power of the chancellor, and gives him less latitude than was allowed the trustee by the deed. The chancellor ought to be governed by good reasons and a sound discretion, in executing the power and objects of the deed, and wherever it appears that the proceedings are in viola-tionof those, they ought to be corrected by the appellate court. But,under the circumstances of this case, it does not appear to us, that the chancellor has acted without good reasons, or that he has done more than the trustee might have done; but for the aforesaid act of assembly. And it moreover appears, that what he has done was consented to by the appellant, Miles, who is now the only person opposing the proceeding. The trustee had power by the deed, to sell the whole estate in a lump, or to sell it in parcels, to sell for cash or on •credit, and to sell at such times as he might think proper.
Act of 1819to ’ S1]eg 0f trust estates, only the trustee, and requires k'™et°hYYow-ers veste,j in the trustee; Yestrfet *the er 0ft¡ie chancellor, or ^¿towed the trustee by the deed; and in J^XTthefaid act, chancellor must be reasons executing üie powers and objects of the deel 0 rus ‘
• The sale made by the court through its commissioner lias not transcended any of those powers. It salisfac-torily appeared, that a sale was necessary. And the court has taken the precaution in the conveyances which have been made to the purchasers, to retain a lien on the property to secure the purchase money. Castle-man has satisfied the sales by executing deeds according to the decree. He is content. There is no sug-gestión, that there was any fraud in the conduct of the commissioner or the purchasers at the sale. Why then set it aside? Will the property bring more at another sale? We cannot tell. Besides, the purchasers may have made improvements, and ordering another sale, would lead to perplexing difficulties, in order to escape manifestinjustice. A proper distribution of the funds arising from the sales, is all that need hereafter be con-' sidered.
It is contended that the court erred in allowing Bacon some charges, other than for repairs and in giving his demands a preference. We are not prepared to sav. *468 that the court erred in allowing Bacon credit for fee» paid attorneys and clerks. If these expenditures were necessary in defending his title to the trust estate, and he contracted to pay them, they ought to be allowed. It was his duty to pay taxes on the estate. Whatever sums are expended necessaiily in the protection of the trust estate, should be allowed the trustee. The item of $130 for commissioners, paid the sheriff on sale of property on execution against Geoge Adams, seems to us to have no connexion with the preservation or protection of the trust estate, and therefore, we cannot imagine the grounds upon which it was allowed. But. as no objection seems to have’ been taken to the commissioners report, making this allowance in the circuit court, we will not regard an objection taken for the first time here. Upon the return of the cause, an opportunity to re-inyesügate this item may be afforded.
Whatever surnsofmoney have been n«-cessarsly expended by trustee in protection of the trust estate should be allowed him on settlement of his accounts.
T)eed of trust, by a debtor,. providing for payment of a debt due the trustee and for payment-0.f debts due other credit1 rs; fact, that trustee holds the legal hl/e to the trust estate, gires his debt no precedence in the order of payment.
The court erred in giving Bacon’s claims a pro-, ference over those of the other claimanls. The deed of trust gives him no. preference. The title being vested in him, docs not, by operation of law, give him the preference, when the express condition upon which it was vested, according to the face of the deed, was to provide for the payment of all the debts, and when the whole-are put on the same footing. Under such circumstances, it is perfectly arbitrary to give any one the preference. By the deed, they should'all fare alike, that is, they should share the trust estate in proportion to the amounts of their several claims.
Lastly, it is insisted, that the court erred in allowing any thing to Bacon or to David Castleman, because neither of them set up a claim in the pleadings. In respect to Da,id Castleman, it is true, that he claimed nothing. There v. ere others bound for his debt, upon the replevin bond to Tharp, besides, J. Castleman. He was only a surety for the debt, and it may have been made by execution. From these circumstances, it would not he rash to presume that it was settled in the absence of all claim on the part of D. Castleman. But as the deed of trust makes provision for it, the safest course .would have been by rule of court, to require D. Castleman to state the amount of his claim by a given day, under pain of baring it, or excluding it from the distribution, if he did not comply. Upon the return of *469 the cause, we think it best that this should yet be done. His claim, if just, will then be allowed. If D. Castle-man desires the benefit of the provision made for him in the deed of trust, his claim must be allowed, unless his-debt .s proved to have been paid.
In respect to Bacon, although he does not, in his original answer, state the accounts precisely, and assert claim to any definite sum, still it is very clear from the blanks in the answer and the manner in which he asks a reference of the accounts to an auditor, that he intends to insist upon the benefit of the trust, so far as to claim compensation for any balance which may be proved in his iavor. This is put beyond all doubt, by one of his supplemental answers, in which his claims are directly asserted, as based upon a report of the commissioner then filed. We perceive no error in allowing Bacon to share in the proceeds of the trust estate, so far as his claims were proved.
We shall make no change in respect to the amount charged against Bacon for the rent of that part of the trust estate occupied by him and his partner.
The decree is grossly defective concerning the distribution of the trust fund. It allows the claims of the parties as far as the same are '•'•supported by satisfactory ani competent proof." Who can tell under this declaration, what is or is not allowed? Is Miles allowed his claim for §1282, or for §1150 only? The court should apportion the trust fund among the claimants, so as to leave nothing uncertain. In cares like this, where a court of chancery has a trust fund to dispose of, and there are controversies as to the rights of any one of the claimants, we regard it as a safe and regular practice foi the court to retain the possession of the controverted share, until, by a proper inquiry into the state of facts, the court can, form a satisfactory opinion, whether it ought to be allowed the claimant, or altogether withheld Irom him, and distributed among others. This case is unlike ordinary suits between individual parties. Here, a duty in virtue of thé act of assemby, has devolved on the court to superintend the execution of a trust. The court having got the control of the trust estate should see that it was fairly and justly distributed, and if, upon suggestion of any of the parties, a doubt is *470 raised, as to the propriety of the demand of any claimant, we regard it the duty of the court to have the matter investigated, and to reject the claim, if to them, it shall seem just to do so. There is no suggestion in the bill, in this qpse, that Bacon or any of the cestui que trusts are not entitled to share in the trust estate according to the provisions of the deed. The bill may be regarded more in the light of a petition to secure the interposition of the court in favor of the complainants, than to exclude any of the defendants from an interest in the trust estate. There is nothing in the bill, which, being taken for confessed, can amount to an acknowl-edgement by any defendant, that his claim has been satisfied.
Mills, Brozan and Richardson, for Miles; Crittenden, for White; Benny, for Bacon; Talbot, for Coopers.
We therefore deem it proper upon the return of the cause, for the court to allow a reasonable time, if any of the parties shall desire, and shall, moreover, satisfy the court of its propriety by affidavit, for the production of proof, showing that any claim has been paid in whole or part, since the execution of the trust deed. We grant this indulgence, because the practice under the act of 1819, has not been settled, and because the principles of the decree are radically erroneous. Upon the return of the cause, it will be proper to have, the accounts stated in conformity to .this opinion, by reference to an auditor, who may be permitted to take additional evidence, relative to the item of $130 for commissions paid the sheriff on sale of property on execution against George Adams.
The decree is reversed and set aside, and the cause remanded for proceedings, not inconsistent herewith and for such final decree as shall be just and equitable. Errors having been committed, to the prejudice of the appellants in both appeals, the appellants must recover pf the appellees, their costs, in each case.